JOHN MOHR & SONS, INC., Plaintiff and Appellant, v. JAHNKE and another, Defendants and Third-Party Plaintiffs and Respondents: MOHR and others, Third-Party Defendants and Appellants.*

*No. 393. Argued June 5, 1972.—Decided June 30, 1972.*
(Also reported in 198 N. W. 2d 363.)

* Motion for rehearing denied, with costs, on September 6, 1972.

For the plaintiff-appellant and third-party defendants-appellants there were briefs by *Ray T. McCann* and *Richard A. McDermott,* both of Milwaukee, and oral argument by *Mr. McDermott.*

For the defendants and third-party plaintiffs-respondents there was a brief by *Whyte, Hirschboeck, Minahan, Harding & Harland, S. C.,* attorneys, and *Richard C. Ninneman* and *Joseph C. Branch* of counsel, all of Milwaukee, and oral argument by *Mr. Ninneman.*

HALLOWS, C. J. The first issue concerns the question of sufficient credible evidence to sustain the jury's verdict. It is well settled that if there is any credible evidence which under any reasonable view supports the burden of proof, the verdict will not be disturbed on appeal.

The evidence is conflicting. Donald E. Jahnke and Kenneth A. Kraft were both employed by Hydrahone which was purchased and became a division of John Mohr & Sons, Inc., in 1962. This division was engaged in the manufacture and sale of poultry-packaging equipment. On April 13, 1964, Jahnke executed the agreement which is the basis of the action. Both Jahnke and Kraft terminated their employment about June 20, 1968. In July they organized Vac-Air, Inc., to engage in the manufacture and sale of a device invented by Jahnke for the lifting and vacuum sealing of poultry on an assembly line. After some months, Kraft left Vac-Air, Inc., and in January, 1969, was re-employed by Mohr, for whom he testified at the trial. The record discloses evidence in favor of Mohr which, if believed by the jury, would have Jahnke working on the new type of vacuum lifter as early as December, 1967, when he was an employee of the plaintiff. There was testimony this unit was tested at Hartwig's poultry plant on June 29, 1968, which would be about a week after termination of Jahnke's employment. Jahnke testified he did not work on the invention as an employee; that during the months of March, April, and May of 1968, he and Kraft were thinking of going into the welding business; that the first time he did any work on a lifter was on the weekend of June 5, 1968, but gave up this attempt because the design failed. He testified that his later experimentation with an air valve, as distinguished from a mechanical valve or lifter, began with sketches around June 26th and he tested the device at Hartwig's on July 15th. Most of the supporting evidence of the two versions is in sharp conflict and makes the ultimate solution of the question of when Jahnke "made" the invention one of credibility. While we might not have decided this factual issue as the jury did, nevertheless, the evidence is such that this court cannot

reverse the finding of the jury based on its belief of Jahnke's version or dispute the weight it gave to the evidence it accepted. If the jury had found for the plaintiff, we, likewise, would have had to sustain that verdict. *See Estate of Daniels* (1972), 53 Wis. 2d 611, 615, 193 N. W. 2d 847.

But it is claimed a new trial should be granted on the basis of newly discovered evidence. This evidence was the testimony of Clarence Hartwig, Jr., that he remembered Jahnke and Kraft testing the vacuum lifter at the Hartwig plant on June 28, 1968, and not in July as claimed by Jahnke. The trial court denied a new trial on the ground of newly discovered evidence because it thought the evidence was cumulative, the plaintiff had not used reasonable and diligent means to secure the witness prior to trial and that most likely a different result would not be reached on a retrial. In the *Estate of Eannelli* (1955), 269 Wis. 192, 214, 68 N. W. 2d 791 (and followed consistently, *see State v. Herfel* (1971), 49 Wis. 2d 513, 521, 182 N. W. 2d 232; *Lock v. State* (1966), 31 Wis. 2d 110, 117, 142 N. W. 2d 183) five requirements were laid down before a motion for a new trial on the basis of newly discovered evidence should be granted. These were: (1) The evidence must have come to the knowledge of the party after the trial; (2) the party must not have been negligent in seeking to discover it; (3) the evidence must be material to the issue; (4) the evidence must not be merely cumulative; and (5) it must be reasonably probable that a different result will be reached on a new trial.

While it is true Hartwig's testimony might be cumulative, we would not place the denial on that ground. Where uncorroborated evidence is sharply conflicting, new evidence which is cumulative for one version may add sufficient weight and credibility for a jury to accept that version as true. While Mohr's affidavit in support

of its motion referred to a series of phone calls made before trial in an unsuccessful attempt to locate Hartwig, the trial court seemed to be impressed with the lack of diligence in securing this testimony of Hartwig and with the promptness with which the witness was located by Mohr after the unfavorable verdict. Rather than being newly discovered evidence, this seems to be evidence which could reasonably have been discovered and should have been secured by timely and proper preparation for trial. The motion for a new trial on newly discovered evidence cannot be used as a cure for inadequate preparation for trial. One seeking a new trial on this ground has a substantial burden to convince the trial court. *Combs v. Peters* (1964), 23 Wis. 2d 629, 636, 640, 127 N. W. 2d 750, 129 N. W. 2d 174.

The trial was bifurcated in that the specific performance issue created by the complaint was tried first and separately from the conspiracy issue on the cross complaint. Hartwig was allowed to testify when the conspiracy issue was tried but his testimony was restricted to the question of Jahnke's credibility. The trial court reasoned that since the jury found for Jahnke and Vac-Air, Inc., on the conspiracy issue and found malice on the part of Mohr, the jury "most likely" would not have found a different result on the contract issue if there were a retrial. We agree and conclude the trial court's denial of a new trial was not error.

It is also argued a new trial should be ordered in the interest of justice under sec. 251.09, Stats. This argument is based partly on a new theory the plaintiff had shop rights to the invention of Jahnke and the issue presented to the jury Mohr's right to the patent based upon Jahnke's agreement was not the real issue. The contract provided Mohr was to be the owner of any invention Jahnke "made" during his employment which related to Mohr's business. Whether shop rights employs the concept of "made" in relation to an invention, we need

not decide. Counsel for Mohr did not object to the form of the inquiry posed to the jury using the word "made." This was properly based on Jahnke's contract and the issue on this contract theory was what was intended or meant by the parties by the word "made" in relation to the invention. Since the plaintiff chose to pursue its claim on the language of the contract, we do not think it ought now be permitted to change the theory of its case to one of shop rights. Sec. 251.09,[1] granting this court the power of discretionary reversal, was not intended to allow plaintiff to proceed to a trial on a valid theory of a cause of action and, losing on that theory, to have a second trial on a different, valid theory of a cause of action. When there are alternative causes of action and one makes a choice, there is little room for arguing the real issue has not been tried.

We find no merit in the argument the compensatory damages in the amount of $35,000 was excessive. The evidence supports the verdict and the trial court upheld the award and thoroughly discussed the evidence. In such a case this court will reverse only if there has been an abuse of discretion. *Page v. American Family Mut. Ins. Co.* (1969), 42 Wis. 2d 671, 681, 168 N. W. 2d 65; *Bach v. Liberty Mut. Fire Ins. Co.* (1967), 36 Wis. 2d 72, 83, 152 N. W. 2d 911; *Gervais v. Kostin* (1970), 48 Wis. 2d 190, 201, 179 N. W. 2d 828.

---

[1] "251.09 **Discretionary reversal.** In any action or proceeding brought to the supreme court by appeal or writ of error, if it shall appear to that court from the record, that the real controversy has not been fully tried, or that it is probable that justice has for any reason miscarried, the supreme court may in its discretion reverse the judgment or order appealed from, regardless of the question whether proper motions, objections, or exceptions appear in the record or not, and may also, in case of reversal, direct the entry of the proper judgment or remit the case to the trial court for a new trial, and direct the making of such amendments in the pleadings and the adoption of such procedure in that court, not inconsistent with the statutes governing legal procedure, as shall be deemed necessary to accomplish the ends of justice."

We find no error in the trial court's fixing counsel's fees in the amount of $20,000. The allowance of costs and of attorney's fees is provided for in sec. 133.01, Stats. 1957. This seems to us to be a reasonable fee in this antitrust case. *See Montague & Co. v. Lowry* (1904), 193 U. S. 38, 48, 24 Sup. Ct. 307, 48 L. Ed. 608. The general factors to be used in fixing counsel's fees in such a case are: "(1) whether plaintiff's counsel had the benefit of a prior judgment or decree in a case brought by the Government, (2) the standing of counsel at the bar—both counsel receiving the award and opposing counsel, (3) time and labor spent, (4) magnitude and complexity of the litigation, (5) responsibility undertaken, (6) the amount recovered, (7) the knowledge the court has of the conferences, arguments that were presented and of work shown by the record to have been done by attorneys for the plaintiff prior to trial, (8) what it would be reasonable for counsel to charge a victorious plaintiff." *Hanover Shoe, Inc. v. United Shoe Machinery Corp.* (M. D. Pa. 1965), 245 Fed. Supp. 258, 302, vacated on other grounds (3d Cir. 1967), 377 Fed. 2d 776; *Trans World Airlines, Inc. v. Hughes* (S. D. N. Y. 1970), 312 Fed. Supp. 478, 480, modified in respects not here material and, as modified, affirmed (2d Cir. 1971), 449 Fed. 2d 51.

The motion for review contests the trial court's reduction of the punitive damages award of $25,000 to $500. The trial court considered it would be manifestly unfair to award both treble damages and punitive damages. We think the trial court should have disallowed the total $25,000 punitive damages on the grounds: (1) That to allow treble damages and punitive damages would amount to double recovery of a penalty and thus violate the basic fairness of a judicial proceeding required by the due process clause of the fourteenth amendment to the federal constitution; and (2) that treble damages provided for by sec. 133.01, Stats., is the exclusive remedy for the cause of action. The cross complaint stated a

cause of action under sec. 133.01 (1), relating to unlaw-ful contracts and conspiracy which provides, in part, "Every contract or combination in the nature of a trust or conspiracy in restraint of trade or commerce is here-by declared illegal." The section provides a penalty for its violation by way of a forfeiture "for each such offense not less than $100 nor more than $5,000." The section provides that any person or corporation "shall also be liable to any person transacting or doing business in this state for threefold the damages he may sustain by rea-son of the doing of anything forbidden by this section, and the cost of suit including a reasonable attorney's fee." The department of justice is directed to enforce the section for recovery of the forfeiture, and sub. (3) provides that "Whoever violates sub. (1) may be fined not more than $5,000 or imprisoned not more than 5 years or both."

The parts of this section making a conspiracy in restraint of trade a crime and illegal is taken from the Sherman Antitrust Act of 1890.[2] It applies to intrastate instead of interstate transactions and the question of what amounts to a conspiracy in restraint of trade is controlled by federal court deci-sions under the Sherman Act. *Pulp Wood Co. v. Green Bay Paper & Fiber Co.* (1914), 157 Wis. 604, 625, 147 N. W. 1058; *State v. Lewis and Leidersdorf Co.* (1930), 201 Wis. 543, 549, 230 N. W. 692; *State v. Milwaukee Braves, Inc.* (1966), 31 Wis. 2d 699, 716, 144 N. W. 2d 1, certiorari denied, 385 U. S. 990, 87 Sup. Ct. 598, 17 L. Ed. 2d 451. The provision for treble dam-ages was added to sec. 133.01, Stats., by ch. 397, Laws of 1957.[3] Courts have voiced the view the purpose of treble damage awards in federal antitrust cases is to

---

[2] Sec. 133.01, Stats., is a substantial re-enactment of 15 USCA, secs. 1 and 2 (before 1937 and 1955 amendments to the federal act not germane to this appeal).

[3] By ch. 397, Laws of 1957, the provision for the recovery of "all damages" was changed to "threefold the damages."

encourage private enforcement of the antitrust laws and thus supplement the government enforcement apparatus. *See United States v. Borden Co.* (1954), 347 U. S. 514, 518, 74 Sup. Ct. 703, 98 L. Ed. 903; *Osborn v. Sinclair Refining Co.* (4th Cir. 1963), 324 Fed. 2d 566, 572; *Klor's, Inc. v. Broadway-Hale Stores* (9th Cir. 1958), 255 Fed. 2d 214, 217; *Kinnear-Weed Corp. v. Humble Oil & Refining Co.* (5th Cir. 1954), 214 Fed. 2d 891, 893. But such purpose is not the sole reason for the enactment of the law in Wisconsin. Our court has long taken the view a statute creating a cause of action for treble damages is punitive in nature to the extent damages above the actual damages are recovered and the statute must be strictly construed. In *Oconto County v. Union Mfg. Co.* (1926), 190 Wis. 44, 208 N. W. 989, this court held that sec. 86.02, imposing treble damages in a case of an injury to a highway was not applicable to the facts, but in so holding the court stated that all damages in excess of actual damages under that section were punitive in character.

In *Kink v. Combs* (1965), 28 Wis. 2d 65, 80, 135 N. W. 2d 789, we recognized that in antitrust suits for treble damages allowed by our statutes, the injured party's judgment was "fattened by the equivalent of punitive damages" and by doing so, "public interest is served by the incentive given" to the injured party to prosecute such a quasi-criminal action. The consolidation of claims for compensation and punitive damages in one cause of action does not change the nature of damages. A punitive damage award, or smart money, is also given on the basis of punishment and to deter others from like conduct. *See Malco v. Midwest Aluminum Sales* (1961), 14 Wis. 2d 57, 66, 109 N. W. 2d 516; *Gladfelter v. Doemel* (1958), 2 Wis. 2d 635, 647, 87 N. W. 2d 490. The reason for giving punitive damages does not change the character of the damages. Allowing an award of punitive damages for wilful and malicious conduct represents

a double recovery in a treble damage suit which may or may not require wilfulness or maliciousness as an element of the cause of action. Two penalties on the same or different theories for the same act violates basic fairness and thus due process of law. It is not unusual that punitive damages may run afoul of the constitution. There is a view punitive damages in libel actions are unconstitutional because of their chilling effect on the freedom of speech guaranteed by the first amendment. *Dalton v. Meister* (1971), 52 Wis. 2d 173, 188 N. W. 2d 494, dissenting opinion.

The second ground for denying the $25,000 punitive damage award is based on the rule that when a statute creates a cause of action and provides the remedy, the remedy is exclusive. *See Baxter v. Sleeman* (1928), 196 Wis. 562, 564, 221 N. W. 382; *Burke v. Madison* (1962), 17 Wis. 2d 623, 638a, 117 N. W. 2d 580, 118 N. W. 2d 898. Multiple damages cannot be awarded in the absence of statutory authority. 22 Am. Jur. 2d, *Damages,* p. 361, sec. 267. In sec. 133.01, Stats., there is provided treble damages, forfeitures, and substantial fines or imprisonment. These remedies completely cover the field of both civil, criminal and quasi-criminal relief for the acts statutorily declared illegal. This section, being punitive, must be strictly construed and consequently will not be construed to include other damages not covered by the terms of the statute. A person should not be able to recover damages both under the statute and at common law when the two remedies are inconsistent. 22 Am. Jur. 2d, *Damages,* p. 363, sec. 267. This view requires a denial of all punitive damages except those included in the treble damages.

*By the Court.*—The judgment is modified by reversing the trial court's allowance of $500 for punitive damages and the judgment, as amended, is affirmed.