**HOMETOWNE BUILDERS, INC., a Virginia Corporation and Robert H. Merriman, Plaintiffs,**

v.

**ATLANTIC NATIONAL BANK, Charles M. Reynolds, Jr., Levi E. Willis and G. Wesley Hardy, Defendants.**

**Civ. A. No. 79–481–N.**

United States District Court,
E. D. Virginia,
Norfolk Division.

Oct. 10, 1979.

Robert M. White, White & Selkin, Norfolk, Va., for plaintiffs.

Edward Delk, Delk, James & Jackson, Conrad M. Shumadine, Kaufman & Oberndorfer, Norfolk, Va., for defendants.

## MEMORANDUM OPINION AND ORDER

CLARKE, District Judge.

The plaintiffs, Hometowne Builders, Inc. (hereinafter "Hometowne"), and Robert H. Merriman, President of Hometowne, filed a Complaint in this Court on April 27, 1979, against defendants, Atlantic National Bank (hereinafter "Atlantic"), Charles M. Reynolds, Jr., President of Atlantic, Levi E. Willis, an acting President of Atlantic at the time of certain alleged injurious actions, and G. Wesley Hardy, an officer of Atlantic. Hometowne is a Virginia corporation with its principal place of business in Virginia Beach, Virginia, and Atlantic is a bank organized under the federal banking laws with its principal place of business in Norfolk, Virginia. All other named individual defendants and plaintiff Merriman are residents of the State of Virginia. Jurisdiction of this Court is based upon 28 U.S.C. § 1331, as plaintiffs have alleged violations of 12 U.S.C. § 1972, thereby entitling them to sue for damages under 12 U.S.C. § 1975, and of 18 U.S.C. § 215, thereby subjecting defendants to potential civil liability under 12 U.S.C. § 503.

Specifically, Count One of the Complaint alleges that defendants violated 12 U.S.C. § 1972, a statute which prohibits certain tying arrangements by banks, namely that an extension of credit cannot be conditioned upon agreements to obtain additional credit, property, or service from the lending bank. Plaintiffs contend that Atlantic tied increases in mortgage loan commitments to plaintiff Merriman's sons, for which plaintiff Merriman had cosigned as surety, to the purchase of stock in Atlantic by both Hometowne and Merriman. Accordingly, plaintiffs have brought suit under 12 U.S.C. § 1975, which provides, in pertinent part: "Any person who is injured in his business or property by reason of anything forbidden in section 1972 of this title may sue therefor . . . and shall be entitled to recover three times the amount of the damages sustained . . . ." Plaintiffs seek both treble damages ($3,000.00) and punitive damages ($250,000.00) for the alleged violation of 12 U.S.C. § 1972.

Count Two of the Complaint alleges that plaintiffs Hometowne and Merriman conducted a substantial amount of business with Atlantic during 1974, 1975, and 1976, and that at various times during this period defendants Willis and Hardy, as officers and directors of Atlantic, extracted certain illegal contributions from plaintiffs payable to Willis or Hardy or to corporations or organizations with which Willis or Hardy were connected. Plaintiffs contend that they made these contributions because they did not wish to endanger their existing and future loan transactions with Atlantic and because "plaintiffs were informed by the defendants that the aforesaid so-called donations were of a religious and charitable nature, and that such solicitation of funds was an entirely legal and normal practice of the defendant, Atlantic National Bank." Complaint at ¶ 24. The Complaint further claims that the aforesaid actions of defendants violated 18 U.S.C. § 215, a criminal statute, which reads:

Whoever, being an officer, director, employee, agent, or attorney of any bank, the deposits of which are insured by the Federal Deposit Insurance Corporation, of a Federal intermediate credit bank, or of a National Agricultural Credit Corporation, except as provided by law, stipulates for or receives or consents or agrees

to receive any fee, commission, gift, or thing of value, from any person, firm, or corporation, for procuring or endeavoring to procure for such person, firm, or corporation, or for any other person, firm, or corporation, from any such bank or corporation, any loan or extension or renewal of loan or substitution of security, or the purchase or discount or acceptance of any paper, note, draft, check, or bill of exchange by any such bank or corporation, shall be fined not more than $5,000 or imprisoned not more than one year or both.

Then, by virtue of 12 U.S.C. § 503, the named officers and directors would be civilly liable in their individual capacities for the alleged violations of 18 U.S.C. § 215, and plaintiffs seek compensatory ($880.00) and punitive ($750,000.00) damages.

This matter now comes before the Court on defendants' Motion to Dismiss filed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Defendants have asserted two grounds for dismissal: (1) Plaintiffs are not entitled to claim punitive damages over and above the treble damages authorized by 12 U.S.C. § 1975; consequently, the claim for punitive damages in Count One should be dismissed. (2) Plaintiffs lack standing under 12 U.S.C. § 503 to assert their private cause of action, and all of the claims in Count Two should be dismissed. The Court has heard oral argument, has reviewed the briefs submitted with the authorities cited therein, and will now address separately defendants' grounds for dismissal.

### Count One: Punitive Damages

It is important to note initially that plaintiffs have not alleged in Count One any facts which constitute a cause of action under the common law, as the common law did not prevent tying the sale of one product or service to the sale of another. Rather, plaintiffs specifically rely upon their statutory cause of action in 12 U.S.C. § 1975 because of the violation of 12 U.S.C. § 1972, which latter section does prohibit certain tying arrangements by banks and bank holding companies. Defendants do not challenge in their current motion plaintiffs' standing to assert the cause of action in Count One or the applicability of 12 U.S.C. § 1972 to the facts of this case; however, they do challenge plaintiffs' claim for punitive damages under this statutory cause of action.

Since the common law cannot provide a basis for claiming punitive damages, it is necessary to examine the statute to determine if plaintiffs can maintain such a claim. The statute specifically provides for recovery of treble damages and a reasonable attorney's fee but makes no reference to punitive damages of any kind. Therefore, it is necessary to examine the legislative history of 12 U.S.C. § 1972 et seq. to determine whether plaintiffs have any implied right to recover punitive damages under these sections. The legislative history does not mention punitive damages, with the only comment on damages being: "[P]rivate parties are given the right to sue for injunctive relief as well as treble damages when they have sustained damages, or are threatened by loss or damage, by reason of a violation of this section's prohibitions." Senate Report No. 91–1084, 91st Cong., 2d Sess., reprinted in [1970] U.S.Code Cong. & Admin.News, pp. 5519, 5536. The absence of any discussion of punitive damages in excess of treble damages is a strong indication that such damages were not contemplated by Congress and were not implied in the statute.

Moreover, the legislative history of 12 U.S.C. § 1972 et seq. clearly demonstrates that these sections were considered additions to the antitrust laws. In "[The] Supplementary Views of Messrs. Bennett, Tower, Percy, and Packwood" to Senate Report No. 91–1084, supra, these senators pointed out that the Senate Banking and Currency Committee was "writing new antitrust" law in the tying arrangement provision. Id. at 5546. These senators also argued that the Senate version of the tying arrangement provision made certain legitimate banking practices "per se violations of antitrust law." Id.

In his supplementary views, Senator Brooke discussed the antitrust nature of the proposed tying provisions. He cited *Standard Oil Co. v. United States*, 337 U.S. 293, 69 S.Ct. 1051, 93 L.Ed. 1371 (1949), an antitrust tying case, in his analysis and quoted extensively from a letter containing the views of the Antitrust Division of the Justice Department as set forth by Assistant Attorney General Richard W. McLaren. Senate Report No. 91–1084, *supra* at 5558–61. This letter indicated that the Justice Department considered the tying arrangement proposal a "most valuable supplement" to the antitrust laws. Furthermore, the Justice Department suggested a four-year statute of limitations, rather than the proposed seven-year period, for "consisten[cy] with Section 4b of the Clayton Act." *Id.* at 5561. Thus, the legislative history of 12 U.S.C. § 1972 *et seq.* indicates that Congress designed these sections as part and parcel of the antitrust laws.

The question then becomes whether there is any implied right to recover punitive damages under 12 U.S.C. § 1972 *et seq.* as part of the antitrust laws. In *Hansen Packing Co. v. Armour & Co.*, 16 F.Supp. 784 (S.D.N.Y.1936), the district court addressed the issue of the availability of punitive damages under the antitrust laws as follows: "In trebling the amount of actual damages, it seems indisputable that the statutes carry their own symbol of punishment. The plaintiff can recover only what the statutes give him." 16 F.Supp. at 788. The court then struck the claim for punitive damages.

Similarly, in *John Mohr & Sons, Inc. v. Jahnke*, 55 Wis.2d 402, 198 N.W.2d 363 (1972), the Supreme Court of Wisconsin addressed the question of whether punitive damages were recoverable under § 133.01 of the Wisconsin Antitrust Act. This section was a substantial reenactment of § 1 of the Sherman Act. The Supreme Court of Wisconsin denied punitive damages on dual grounds. First, the court ruled that the recovery of both treble damages and punitive damages amounted to the "double recovery of a penalty" in violation of the due process clause of the United States Constitution. 198 N.W.2d at 367. Second, the court held that since § 133.01 created the cause of action and provided only for treble damages as the statutory remedy, the statutory remedy was exclusive. 198 N.W.2d at 368. Therefore, punitive damages were not recoverable under the Wisconsin antitrust laws.

■ This Court agrees with the district court in New York, as well as with the Wisconsin Supreme Court, that both treble damages and punitive damages are not recoverable under the antitrust laws. The combination of treble damages and punitive damages is necessarily duplicative as a punitive element is inherent in the trebling of actual damages. Since the legislative history clearly indicates that 12 U.S.C. § 1972 *et seq.* is an addition to the antitrust laws, an award of punitive damages in excess of the treble damages specifically provided for in the statute is not recoverable under this statutory cause of action. Accordingly, the Court GRANTS defendants' Motion to Dismiss the claim for punitive damages in Count One of the Complaint.

### Count Two: Standing

Count Two alleges that defendants extracted illegal contributions from plaintiffs in violation of 18 U.S.C. § 215, and plaintiffs seek to recover the contributions, as well as punitive damages, from defendants. The statutory basis for the private cause of action is 12 U.S.C. § 503, which reads in pertinent part:

> If the directors or officers of any member bank shall knowingly violate or permit any of the agents, officers, or directors of any member bank to violate any of the provisions of sections . . . 220 [now section 215] . . . of Title 18, every director and officer participating in or assenting to such violation shall be held liable in his personal and individual capacity for all damages which the member bank, its shareholders, or *any other persons* shall have sustained in consequence of such violation. (emphasis added).

Defendants argue that plaintiffs received the benefit of several loans from Atlantic; consequently, they suffered no injury and lack standing to assert a cause of action under 12 U.S.C. § 503. The Court agrees with defendants that the sustaining of actual damage is an essential element of a cause of action under § 503; the issue then becomes whether plaintiffs have suffered any damages "in consequence of" the alleged violation of 18 U.S.C. § 215.

Defendants essentially contend that the contributions were additional consideration for inducing the bank to exceed normal risk criteria and to make an improvident loan to plaintiffs. In their "Memorandum in Support of Motion to Dismiss" at 9, defendants state: "Plaintiffs received the benefit of several loans from Atlantic which no other lending institution would grant on substantially similar terms and conditions in accordance with sound banking practices." Although the defendants do not specifically use the term, they, in effect, accuse the plaintiffs of bribery.[1]

Plaintiffs, on the other hand, have characterized the transaction differently by contending that they initially wished to further Atlantic's efforts to help the Black community and took out a loan for two automobiles followed by several construction loans over a period of a few years. Then, they were unable to say "no" to a bank officer's request for a "donation" to an allegedly non-profit enterprise controlled by that officer because all of the loans were "tied together under a cross-collateralization scheme, whereby a default on any one of the loans, however minor, [would] result in foreclosure on any or all of the outstanding loans, leading to financial ruin." "Memorandum in Support of Motion to Overrule Defendants' Motion to Dismiss" at 3. In effect, plaintiffs argue that they had no choice but to make the contributions because their overall continued financial viability was at stake. Such an argument characterizes the transactions in question as extortion[2] or exaction.[3]

■ The characterization of the actions and contributions complained of as bribery or extortion controls whether plaintiffs have been damaged by such actions. If it is assumed from the outset, as defendants contend, that plaintiffs engaged in bribery and therefore are not injured because they received the benefit of their bargain, then the Court can conclude that plaintiffs were not damaged by the violations of 18 U.S.C. § 215. If the violations are considered to be acts of extortion, on the other hand, a different conclusion results. However, whether the transactions in question are to be considered as bribery or as extortion is certainly a question over which reasonable men may differ. Accordingly, this determination should be based upon the evidence presented at trial. The defendants are well within their rights in asserting bribery as a defense; but the plaintiffs are well within their rights to argue under the same set of facts that they have been damaged.

Defendants further argue that plaintiffs are not among the group of persons whom

---

1. Bribery is defined in Black's Law Dictionary, at 239 (4th ed. 1968) as: "The offering, giving, receiving, or soliciting of any thing of value to influence action as official or in discharge of legal or public duty."

2. Extortion is defined in *id.* at 696 as: "Unlawful obtaining of money from another." The distinction between bribery and extortion is: "the former offense consists in the offering a present, or receiving one, if offered; the latter, in demanding a fee or present, by color of office." *Id.* at 697. Furthermore, extortion and bribery, by definition, are mutually exclusive. *People v. Feld*, 262 App.Div. 909, 28 N.Y.S.2d 796, 797 (1941).

3. Exaction is defined in Black's Law Dictionary, *supra* at 664, as: "The wrongful act of an officer or other person in compelling payment of a fee or reward for his services, under color of his official authority, where no payment is due." The distinction between extortion and exaction, then, is a fine one. Extortion involves a case in which the person illegally obtains more than is due, when something is initially due him; exaction involves obtaining something of value when there was nothing due him in the first instance. *Id.* In the present case, it is arguable under the alleged facts that both, or either, extortion and exaction occurred, and, therefore, the fine distinction is of little importance.

18 U.S.C. § 215 was designed to protect. They rely upon *United States v. Lane*, 464 F.2d 593 (8th Cir.), *cert. denied*, 409 U.S. 876, 93 S.Ct. 127, 34 L.Ed.2d 129 (1972), and *United States v. Etheridge*, 414 F.Supp. 609 (E.D.Va.1976) (Kellam, J.). The Court in *Lane* stated:

> It seems clear to us that the purpose of the Act was to protect the deposits of banks having federal insurance by preventing unsound and improvident loans to be made from such deposits by officers and directors of the bank. The Congress was not interested in who received the commission but was merely insulating loan transactions from the influence of such a practice. When a commission is stipulated by an officer of a bank, the probability is that his judgment on the merits of the loan is adversely affected tremendously. This evil is not removed by a stipulation that provides for payment of a commission to a third party, especially where an interest in the third party is traceable directly to the banker. In such a case, the banker is violating a position of trust that he owes to the bank. This position is buttressed by the fact that Section 215 is found in the Bribery, Graft and Conflicts of Interests Chapter of the Title (Chapter XI).

464 F.2d at 595, passage *cited in United States v. Etheridge, supra* at 610–11.

■ This Court agrees that 18 U.S.C. § 215 was designed "to protect the deposits of banks" from dissipation through unwise lending practices and that plaintiffs are not depositors. However, because the statute protects depositors in one situation does not necessarily mean that this is the only class of persons protected by the statute. First, the statute is a criminal one and in and of itself protects the public in general. Moreover, both cases relied upon by defendants involved situations in which the United States brought a criminal action against the bank officer who had violated § 215; such a suit by the United States thereby protects the deposits of the bank. Plaintiffs, however, have alleged that defendants violated 18 U.S.C. § 215, and then they base their civil cause of action on 12 U.S.C. § 503, which gives a cause of action to "the member bank, its shareholders, or *any other persons*" damaged by the violation by bank officers of 18 U.S.C. § 215. (emphasis added).

There is no indication in the legislative history, or any other authority to the contrary, that "any other persons" may only be the bank's depositors. Rather, a better interpretation would be that since the civil cause of action in § 503 is based upon a violation of a criminal statute, the phrase "any other person" permits plaintiff, or any member of the general public, whether a depositor of the bank or not, to bring an action under § 503, if they allegedly suffered the requisite damage under that section. In the present case, plaintiffs have made sufficient allegations of violations of 18 U.S.C. § 215 by the defendants, and such allegations bring them within the language of 12 U.S.C. § 503 granting a cause of action to "any other persons."

■ Defendants further contend that even if plaintiffs may maintain their cause of action under § 503, they cannot claim punitive damages under that section. Section 503 specifically provides for damages but makes no mention of punitive damages. Unlike 12 U.S.C. § 1275, the § 503 provision for damages is not clarified in any way by the specification of treble damages or by any legislative history indicating that the statute is an addition to the antitrust laws. *See* discussion *supra*. Rather, § 503 merely permits damages, and there is no other statutory language or legislative history to aid in the interpretation of what damages are allowed. It has been settled for years, however, that "the federal law permits the recovery of exemplary or punitive damages," *Basista v. Weir*, 340 F.2d 74, 87 (3d Cir. 1965), and the Supreme Court has held that "misconduct sufficient to justify an award of compensatory damages also justifies the imposition of a punitive award." *Curtis Publishing Co. v. Butts*, 388 U.S. 130, 161, 87 S.Ct. 1975, 1994, 18 L.Ed.2d 1094, 1114 (1967).

Since the misconduct complained of in the present case involves violation of a

criminal statute and since the rationale for punitive damages is one of deterrence, the claim for such damages seems appropriate under § 503. Absent any indication that punitive damages were not intended under § 503, plaintiffs' *claim* for such damages is permissible and defendants' Motion to Dismiss is DENIED. The Court further notes, however, that whether plaintiffs are entitled to the requested punitive damages is a matter to be determined from the evidence at trial.

In summary, defendants' Motion to Dismiss plaintiffs' claim for punitive damages in Count One is GRANTED, and defendants' Motion to Dismiss all or any portion of plaintiffs' claim in Count Two is DENIED. Finally, the Court in its discretion DENIES defendants' Motion for Certification of an interlocutory appeal of this Order pursuant to 28 U.S.C. § 1292. The Court is not of the opinion that an interlocutory appeal will "materially advance the ultimate termination of the litigation" as required for certification under § 1292(b).