STATE OF MAINE
CUMBERLAND, ss



STATE OF MAINE
CUMBERLAND, SS.
CLERK'S OFFICE

May 29   2 07 PM '01

SUPERIOR COURT
CIVIL ACTION
DOCKET NO. CV-00-203
RAC - Cum - 5/29/2001

JULIE TAYLOR, et al.

     Plaintiffs


v.

PHILIP MORRIS INCORPORATED,
R.J. REYNOLDS TOBACCO COMPANY,
BROWN & WILLIAMSON TOBACCO CORP.,
LORILLARD TOBACCO CO.,
LIGGETT GROUP, INC., and
BROOKE GROUP, LTD.

     Defendants

DECISION

## FACTS

This is a class action lawsuit brought under Maine's antitrust and consumer protection laws. Plaintiffs are Maine consumers who bought cigarettes manufactured by Defendants. Plaintiffs allege that from at least January 1, 1988 to the present, Defendants have participated in a systematic series of agreements to fix cigarette prices above competitive levels in violation of 10 M.R.S.A. § 1101 et seq. and 5 M.R.S.A. § 205-A et seq.. Complaint ¶¶ 2-3, 101-114.

The crux of Plaintiffs' claims concerns an alleged agreement among Defendants to engage in lockstep, or parallel, pricing. Plaintiffs allege that the Defendants, through their directors, officers, employees and agents, participated in meetings at various times during the class period at which time future price increases for cigarettes were discussed, agreed upon and implemented. According to

Plaintiffs, these meetings included meetings of the Committee of Council, a group of high-level, in-house counsel employed by the Defendants. Id. ¶ 57. It is alleged that the Committee of Council held "executive sessions," at which time agreements were discussed and reached regarding future price increases for cigarettes for the United States as well as abroad. Id. With regard to the United States' cigarette market, the price increases were allegedly accomplished through the use of signals that would trigger a previously agreed upon increase. These signals allegedly came in the form of one of the Defendants announcing to their distributors that the distributors were restricted from purchasing cigarettes until further notice. Id. ¶ 58. After such a signal it is alleged that the other Defendants would raise the prices of their cigarettes. Id.

According to Plaintiffs, throughout the class period, Defendants' distributors routinely received notification from each Defendant of a impending price increase within hours - and often within minutes - of each of the other Defendants' price increase notification. Id. ¶ 78. Moreover, Defendants allegedly created programs in which distributors received incentives to report to each respective Defendant the actual discounts and product promotions for all cigarette products sold, including those of competitors. Id. ¶ 79. The Complaint alleges this pricing and discounting information was forwarded to an electronic database clearinghouse in Pittsburgh, Pennsylvania, which Defendants accessed to monitor the actions of the other Defendants and ensured that all Defendants were honoring the mutually-agreed price levels. Id.

Plaintiffs allege dates and amounts of price increases during the class period. Id. ¶¶ 41, 44, 48, 50-54, 59, 60, 62, 63, 65-74, 76, 77. In addition, it is alleged that although the Defendants often cited increasing taxes as the basis for price increases, between 1980 and the mid-1990s, cigarette price increases were three times the amount of cigarette tax increases. Id. ¶ 48.

The Complaint further alleges that until recently, Plaintiffs had no knowledge of the alleged conspiracy "or of any facts that might have lead to the

2

discovery thereof in the exercise of due diligence." Id. ¶ 88. Plaintiffs allege that they could not have discovered the conspiracy at an earlier date by the exercise of due diligence because of "the deceptive practices and techniques of secrecy employed by Defendants and their co-conspirators to avoid detection of, and to fraudulently conceal their contracts, combinations, and conspiracies." Id. Plaintiffs additionally allege that the conspiracy was, by its nature, self-concealing and they assert that Defendants' fraudulent concealment of the conspiracy tolls the statute of limitations. Id. ¶¶ 90-91.


## DISCUSSION

### 1. Failure to State a Claim under the Maine Antitrust Act

Defendants first argue that Plaintiffs have failed to state a claim under the Maine Antitrust Act because Plaintiffs' allegedly vague and conclusory allegations of price-fixing are not supported by any factual allegations that, if true, would support a conclusion that Defendants conspired to fix prices. They argue that the Complaint alleges merely that Defendants' prices rose at approximately the same time and that allegations of parallel price increases are insufficient because such conduct, without more, does not exclude the possibility that the alleged conspirators acted independently and lawfully. Defendants also argue that although the Complaint alleges in conclusory terms an "agreement" to fix prices it does not contain a single fact concerning the time or place of the alleged conspiracy.

Modern notice pleading practice requires "a short and plain statement of the claim to provide notice of the cause of action. . . . The function of the complaint is to provide fair notice of a claim . . . It must sufficiently apprise defendants of the nature of the claim against them." Town of Stonington V. Galilean Gospel Temple, 1999 ME 2, ¶ 14, 722 A.2d 1269, 1272 (citations omitted). A complaint "should not be dismissed unless it is beyond doubt that no relief can be granted under any facts that might be proved to support the plaintiff's claim." Munjoy Sporting & Athletic Club

v. Dow, 2000 ME 141, ¶ 16, 755 A.2d 531, 539. There are no Maine cases addressing the sufficiency of a complaint in an antitrust action. A review of federal law indicates that antitrust complaints are not subject to especially stringent or heightened pleading requirements. Mountain View Pharmacy v. Abbott Laboratories, 630 F.2d 1383, 1386 (10th Cir. 1980)("[T]he liberal rules of pleading are as applicable to antitrust cases as any other case."). However, while the pleading standard does not vary, what constitutes sufficient notice to enable a defendant to formulate a responsive pleading does change from case to case. Id. A complaint in a complex, multi-party suit may require more information than a simple single party case. Id. at 1386-87.

Moreover, in the context of alleged price-fixing conspiracies, plaintiffs must plead more than mere parallel price increases. Theatre Enterprises v. Paramount Film Distributing Corp., 346 U.S. 537, 541 (1954)("[T]his Court has never held that proof of parallel business behavior conclusively establishes agreement or . . . that such behavior itself constitutes a Sherman Act offense."). "The fact that competitors may see proper, in the exercise of their own judgment, to follow the prices of another manufacturer, does not establish any suppression of competition or show any sinister domination." United States v. International Harvester Co., 274 U.S. 693, 708-09 (1927). However, although parallel behavior alone does not set out a claim of an antitrust conspiracy, "parallel behavior may support such a claim when augmented by 'additional evidence from which an understanding among the parties may be inferred.'" Monument Builders of Greater Kansas City, Inc. v. American Cemetery Ass'n of Kansas, 891 F.2d 1473, 1481 (10 Cir. 1989).

Based on the aforementioned principles of pleading, the Complaint sufficiently and adequately gives fair notice to Defendants of what the Plaintiffs' claim is and the grounds upon which it rests. In addition to parallel price increases, the Plaintiffs have alleged the methodology, mechanisms and motives behind the price increases. More specifically, the pleadings specify that a series of meetings took place, the persons in attendance, the topics discussed and the impact of the meetings

4

on the alleged conspiracy. The pleadings also specify how a previously agreed upon price increase was signalled to other Defendants and monitored. "[T]he pleadings are sufficient if they set forth facts from which an inference of unlawful agreement can be drawn." Brett v. First Federal Savings & Loan Ass'n, 461 F.2d 1155, 1158 (5th Cir. 1972). Plaintiffs have set forth ample information from which an unlawful agreement could be inferred.

Furthermore, the cases cited by the Defendants can be distinguished from the present case. In Mountain View Pharmacy v. Abbott Laboratories, 630 F.2d 1383 (10th Cir. 1980), "the original complaint used statutory language to describe the alleged antitrust violations without including any factual allegations whatsoever. . . . the [amended] complaint was longer and better organized, but aside from allegations relating to one specific drug and one specific manufacturer, no facts had been added to support the alleged statutory violations." Id. at 1385. In Commonwealth of Pennsylvania v. Pepsico, Inc., 836 F.2d 173, 181 (3rd Cir. 1988), the Third Circuit found it significant that "Pennsylvania did not allege any meetings between [the defendants], any communications between them, or any other means by which their alleged conspiracy came about." As well, in Pepsico, the Court noted that because the soft drink industry was involved, and hence the Soft Drink Act, the plaintiffs had a pleading burden "much higher than that in a mine-run antitrust complaint." Id. The complaint in Estate Construction Co. v. Miller & Smith Holding Co. Inc., 14 F.3d 213, 221 (4th Cir. 1994) "lack[ed] completely any allegations of communications, meetings, or other means through which one might infer the existence of a conspiracy." In Estate Construction, the plaintiffs "merely reiterat[ed] mechanically the words of the Sherman Act. . ." Id. at 222.

In short, the present case is not analogous to the cases cited by the Defendants and the Complaint sufficiently alleges facts from which an unlawful agreement can be inferred and provides fair notice of the claim to Defendants. For these reasons, Defendants' motion to dismiss for failure to state a claim under the Maine Antitrust Act is: DENIED.

5

## 2. *Fraudulent Concealment*

Both the Maine Antitrust Act and the Unfair Trade Practices Act are governed by a six year of statute of limitations. 14 M.R.S.A. § 752. The cause of action accrues when the plaintiff "receive[s] a judicially recognizable injury". Bozzuto v. Ouellette, 408 A.2d 697, 699 (Me. 1979). Defendants argue that because Plaintiffs' Complaint was filed on March 24, 2000, claims arising before March 24, 1994 are barred.

The statute of limitations is tolled, however, if the defendant fraudulently conceals the violative conduct. 14. M.R.S.A. § 859. Section 859 offers two separate bases for tolling the statute of limitations. A plaintiff may invoke § 859 if either the defendant has fraudulently concealed from the plaintiff the existence of a cause of action or the plaintiff's claim itself is grounded on fraud. Chiapetta v. Clark Associates, 521 A.2d 697, 700 (Me. 1987). Plaintiffs do not argue that the antitrust action is grounded in fraud, but rather that the Defendants fraudulently concealed the existence of a cause of action. Regardless, in either instance, the statute starts to run only when the plaintiff discovers or in the exercise of due diligence and ordinary prudence should have discovered the existence of the cause of action or fraud. Id.

Plaintiffs argue that they have properly alleged both a self-concealing price-fixing conspiracy and affirmative conduct on the part of Defendants to conceal this conspiracy. Plaintiffs also allege that "until recently" they had no knowledge of the conspiracy, or any facts that might have lead to the discovery of the conspiracy. Complaint ¶ 88. The plaintiffs argue that they have plead, with the requisite particularity, that they could not have discovered the existence of their cause of action through a reasonable exercise of due diligence.

## Self-Concealing Conspiracy

Plaintiffs argue that a self-concealing conspiracy negates the need for allegations of affirmative conduct independent of the conspiracy. Several courts

6

have recognized the "self-concealing conspiracy" doctrine, which allows plaintiffs to satisfy the "concealment" prong of fraudulent concealment by showing that the conspiracy was inherently self-concealing. Under this doctrine, there is no need to require the pleading of affirmative actions taken by defendants to prevent the plaintiff's discovery of its claim. As one court stated: "[I]f the conspiracy conceals itself, it would be anomalous to require plaintiff to allege affirmative acts by defendants to conceal the conspiracy because such acts would be unnecessary and therefore never performed . . . defendants would be rewarded for engaging in a successful conspiracy; because no affirmative acts independent of the conspiracy would be necessary to maintain concealment. . ." Bethlehem Steel Corporation v .Fischbach and Moore, Inc. 641 F. Supp 271, 274 (E.D. Pa 1986); see also State of New York v. Hendrickson Brothers, Inc., 840 F.2d 1065, 1083 (2nd Cir. 1988); In Re Nine West Shoes Antitrust Litigation, 80 F. Supp.2d 181, 192 (S.D.N.Y. 2000).

The Maine Law Court has not addressed the issue of whether or not the self-concealing conspiracy theory is viable in Maine. At this time, this Court declines to adopt this theory.

Affirmative Acts

Several courts have ruled that "affirmative acts" in furtherance of a conspiracy must be plead to establish fraudulent concealment. For example, in Supermarket of Marlinton, Inc. v. Meadow Gold Dairies, Inc., 71 F.3d 119, 124-25 (4th Cir. 1995), the Fourth Circuit adopted the affirmative act standard in a case involving allegations of price-fixing.[1] See also Phinney Dock & Transport Co. v. Penn Central Corp., 838 F.2d 1445, 1472 (6th Cir. 1988)("A plaintiff should be required

---

[1]The Fourth Circuit did not rule out the possibility of adopting the self-concealing standard in certain cases. However, Meadow Gold Dairies involved allegations of price-fixing and the Court found that price-fixing is not inevitably deceptive or concealing. Supermarket of Marlinton, Inc. v. Meadow Gold Dairies, Inc., 71 F.3d at 123. The Court stated, however, that "[I]f an antitrust violation were demonstrated to be in its very nature deceptive, i.e., concealment was an element of the offense rather than merely a method of hiding it, then application of the self-concealing standard might well be appropriate. Id. at 123 & n.1.

to prove affirmative acts of concealment, particularly in light of the strong policy in favor of statute of limitations."); Berkson v. Del Monte Corp., 743 F.2d 53, 56 (1st Cir. 1984)(stating that affirmative acts were necessary to establish fraudulent concealment). There is no requirement that these affirmative acts of concealment be independent of the antitrust conspiracy.[2] State of Texas v. Allan Construction Co., 851 F.2d at 1532, 1534; Supermarket of Marlinton, Inc. v. Meadow Gold Dairies, Inc., 71 F.3d at 124-126.

The Plaintiffs argue that even if the conspiracy was not "self-concealing," they have alleged sufficient affirmative acts of concealment to toll the statute of limitations. Plaintiffs allege the Defendants employed techniques of secrecy such as: (1) secret meetings; (2) the limitation of price-fixing information only to high-level corporate officials at each Defendant; (3) the use of previously-agreed signals as triggers of price increases; and (4) misrepresentations to the public and customers concerning the reasons for the timing and amount of price increases, such as, for example, stating the price increases were necessary solely as a result of tax increases or input costs.

There are no Maine cases involving the application of fraudulent concealment to a cause of action alleging price-fixing. The Law Court has stated that in order for a plaintiff to establish fraudulent concealment they must establish that defendants actively concealed material facts from the plaintiff and that the plaintiff relied on their acts and statements to their detriment.[3] Harkness v. Fitzgerald, 1997

---

[2]Defendants seem to argue that fraudulent concealment consists of affirmative acts independent of the underlying conspiracy. However, the weight of authority has adopted the view that a plaintiff must prove that the defendants affirmatively acted to conceal their antitrust violations, but the plaintiff's proof may include acts of concealment involved in the antitrust violation itself. As the Fourth Circuit explained, this standard permits courts to "avoid the difficult, if not impossible, task of deciding which acts are in furtherance of conspiracies and which acts are separate and apart from conspiracies." Supermarket of Marlinton, Inc. v. Meadow Gold Dairies, Inc., 71 F.3d 119, 125 (4th Cir. 1995).

[3]Fraudulent concealment may also be establish by showing that a special relationship existed between the parties that imposed a duty to disclose the cause of action, and the failure of defendants to honor that duty. Harkness v. Fitzgerald, 1997 ME 207, ¶ 6, 701 A.2d at 372. Plaintiffs do not argue

8

ME 207, ¶ 6, 701 A.2d 370, 372. Because a claim of fraudulent concealment necessarily includes allegations of fraud, it must be plead with particularity. M.R.Civ. P. 9(b); Barnes v. McGough, 623 A.2d 144, 146 (Me. 1993).

In the present case, Plaintiffs have not plead with sufficient particularity the details of the Defendants concealing acts. As well, the Plaintiffs' reliance on alleged secret meetings, misrepresentations regarding price increases and price signalling to establish fraudulent concealment seems to be misplaced. First, failing to disclose is not an affirmative act unless the parties share a fiduciary relationship, which is not the case here. See Harkness v. Fitzgerald, 1997 ME 207, ¶ 6, 701 A.2d 370, 372; see also Pinney Dock and Transport Co. v. Penn Central Corp., 838 F.2d 1445, 1472 (6th Cir. 1988)("Mere silence, or one's unwillingness to divulge one's allegedly wrongful activities, is not sufficient.").

Second, Plaintiffs' argument that the Defendants' alleged misrepresentation regarding the reasons for the price increases constitutes affirmative acts of concealment also fails. In Meadow Gold Dairies, the Fourth Circuit stated that "failing to admit to illegal conduct upon general inquiry could not constitute 'a claim of fraudulent concealment.'" Supermarket of Marlinton, Inc. v. Meadow Gold Dairies, Inc., 71 F.3d at 123 (citing Pocahontas Supreme Coal Co. v. Bethlehem Steel Corp., 828 F.2d 211, 218 (4th Cir. 1987)); see also In re Milk Products Antitrust Litigation, 84 F.Supp.2d 1016, 1023 (D. Minn. 1997)("Simply denying the existence of an antitrust violation does not constitute fraudulent concealment, and to hold otherwise 'would effectively nullify the statute of limitations in [antitrust actions].'"). Finally, the allegations of price signalling do not constitute concealment or misrepresentation of material fact. See Harkness v. Fitzgerald, 1997 ME 207, ¶ 7, 701 A.2d 370, 372. Therefore, Plaintiffs' allegations of secret meetings, use of signals and misrepresentation to the public regarding the reason for price increases are insufficient to satisfy the affirmative act requirement of fraudulent concealment.

Furthermore, Maine law requires that plaintiffs allege detrimental reliance in

_____

that a special relationship exist between the parties.

order to invoke the fraudulent concealment doctrine. Harkness v. Fitzgerald, 1997 ME 207, ¶ 7, 701 A.2d 370, 372. Plaintiffs do not allege that they relied on representations by the Defendants regarding price increases.

Finally, the statute of limitations starts to run when the plaintiff discovers "or in the exercise of due diligence and ordinary prudence should have discovered the existence of the cause of action." Chiapetta v. Clark Associates, 521 A.2d at 700. A plaintiff pleading fraudulent concealment must state facts showing that they exercised due diligence in trying to uncover the facts. Gonzalez-Bernal v. United States, 907 F.2d 246, 250 (1st Cir. 1990).[4] Plaintiffs' conclusory allegations that they "had no knowledge of the contract, combination or conspiracy . . . or of any facts that might have lead to the discovery thereof in the exercise of reasonable diligence" does not meet the requisite pleading standard.

Plaintiffs' allegations of fraudulent concealment are not plead with the particularity required by M.R.Civ. P. 9(b) and relevant caselaw. Because of these pleading defects, Plaintiffs' claims which depend on allegations that fall outside the applicable limitations period are dismissed.

Defendants' motion to dismiss claims arising before March 24, 1994 is: GRANTED.

## 3. *Punitive Damages*

Plaintiffs are seeking to recover punitive damages in addition to treble damages and attorney fees. Plaintiffs argue that punitive damages are recoverable in all actions based upon tortious acts in which the Defendant acted with malice. See C.N. Brown Co. v. Gillen, 569 A. 2d 1206, 1213-14 (Me. 1990). The Plaintiffs argue that their statutory claims are linked with the doctrine of fraudulent concealment

---

[4]There are no Maine cases discussing the requirements for pleading due diligence. However, the First Circuit's pleading standard would appear to represent the majority view. See e.g., Lanza v. Merrill Lynch & Company Inc., 154 F.3d 56, 60 (2nd Cir. 1998); Scherer v. Balkema, 840 F.2d 437, 441 n.8 (7th Cir. 1988).

and are therefore akin to tort-based claims. Plaintiffs further argue that although they do not specifically allege malice in their complaint, the complaint has sufficiently alleged a conspiracy in violation of Maine antitrust law that it can be inferred that Defendants have acted "maliciously and in reckless disregard of Plaintiffs' rights by violating these statutes."

Neither Maine's Antittrust Act nor the UTPA permit a plaintiff to recover punitive damages. Both statutes set forth a comprehensive enforcement framework. Under the UPTA, a private action may be brought for "actual damages, restitution and for such other equitable relief, including an injunction." 5 M.R.S.A. § 213 (1). Under the Antitrust Act, if the court finds for the plaintiff, the plaintiff "shall recover 3 times the amount of damages sustained and cost of suit, including necessary and reasonable investigative costs, reasonable experts' fee and reasonable attorney's fees." 10 M.R.S.A. § 1104(1). Because both of these statutes "fully regulate[] the procedures for relief, [the court] must assume the Legislature intended the same to be exclusive and not cumulative." King Resources Company v. Environmental Improvement Commission et al., 270 A.2d 863, 866 (Me. 1970); see also Fleischmann v. Maier Brewing Col, 386 U.S. 714, 720 (1967)("When a cause of action has been created by a statute which expressly provides the remedies for vindication of the cause, other remedies should not readily be implied.").

Furthermore, the Law Court has held that punitive damages are not available under the UTPA. In Beaulieu v. Dorsey, 562 A.2d 678 (Me. 1989), the Law Court discussed the award of attorney fees in the context of the UTPA. The Court noted that the party seeking costs should provide affidavits and bills which separate the costs of pursuing the UPTA claim from those incurred in pursuing a remedy not available under the Act. Id. at 679. The Law Court held that the "cost of bringing a claim for punitive damages . . . is not recoverable under the [UTPA]." Id.

As well, a substantial body of federal case law supports the view that punitive damages are not available to a plaintiff in an antitrust action. See e.g., Perez v. Z Frank Oldsmobile, Inc., 223 F.3d 617, 621 (7th Cir. 2000)("When a federal statute

11

provides for treble damages (or some other multiplier), judges regularly conclude that punitive damages may not be added."); Brown v. Presbyterian Healthcare Services, 101 F.3d 1324, 1332 (10th Cir. 1996)("[I]t is clearly improper to allow a plaintiff to recover punitive damages along with trebled damages on an antitrust claim."); Fineman v. Armstrong World Industries, Inc., 980 F.2d 171, 218 (3rd Cir. 1992) ( a plaintiff "must elect between recovering under either tort law with any punitive damages or under its antitrust claim with its treble damages."); McDonald v. Johnson & Johnson, 722 F.2d 1370, 1381 (8th Cir. 1984)("Punitive damages beyond the statutory trebled damages cannot be awarded for an antitrust violation."); Spence v. Southeastern Alaska Pilots' Association, 789 F. Supp. 1014, 1029 (D. Alaska 1992)("punitive damages are not available on federal anti-trust claims"); Central Telecommunications Inc. v. TCI Cablevision Inc., 610 F. Supp. 891, 910 (W.D. Missouri, 1985)("it would be inappropriate to allow plaintiff to recover both treble damages and punitive damages."); Hometowne Builders, Inc. v. Atlantic Nat'l Bank, 477 F. Supp 717, 720 (E.D. Virginia, 1979)("both treble damages and punitive damages are not recoverable under the antitrust laws. The combination of treble damages and punitive damages is necessarily duplicative as a punitive element is inherent in the trebling of actual damages."); Hansen Packing Co. v. Armour & Co., 16 F. Supp. 784, 789 (S. D. N. Y., 1936)("[i]n trebling the amount of actual damages, it seems indisputable that the statutes carry their own symbol of punishment).

For the above reasons, Plaintiffs are not entitled to punitive damages. Defendants' motion to dismiss the claim for punitive damages is: GRANTED.

Date: May 29, 2001

Justice Roland Cole
Superior Court

12

Date Filed __03-24-00__ __CUMBERLAND__ Docket No. __CV 00-203__

County **JUSTICE COLE SPECIALLY ASSIGNED**

Action __STATUTORY ACTIONS__

~~PHILIP MORRIS COMPANIES, INC.~~ dismissed 10-3
✗ PHILIP MORRIS INCORPORATED
~~R.J. REYNOLDS TOBACCO HOLDINGS, INC.~~ dismisse
✓ R.J. REYNOLDS TOBACCO CO.
~~B.A.T. INDUSTRIES, PLC~~ dismissed 10-3-00
~~BATUS HOLDINGS, INC.~~ dismissed 10-3-00
✓ BROWN & WILLIAMSON TOBACCO CORP.
✓ LORILLARD TOBACCO CO.
✓ ~~LOEW CORPORTION~~ dismissed 6-26-00
✓ LIGGETT GROUP, INC.
✓ BROOKE GROUP, LTD

JULIE TAYLOR    RICHARD DRAKE
LESLIE ST. LEWIS    SUSAN RAWSTRON
BILL MCGRATH    MARY FITZGERALD
JOHN DAVIS    CLIFFORD SAUCIER
ROBERT FAHERTY    DONALD RIOUX

vs.

| Plaintiff's Attorney | Defendant's Attorney |
|---|---|
| JAMES T. KILBRETH ESQ  774-4000<br>PO BOX 586, PORTLAND ME 04112<br>SEAN MAHONEY, ESQ.  774-4000<br>P. O. BOX 586, PORTLAND, MAINE 04112<br><br>**SEE ATTACHED LIST** | JOHN LAMBERT, ESQ. (DEF. ALL BUT<br>P. O. BOX 15215    BAT INDUSTRIES)<br>PORTLAND, MAINE 04112-5215<br>871-7033<br><br>**SEE ATTACHED LIST**<br>~~CHARLES ABBOTT, ESQ. (B.A.T. IND.)~~<br>~~JAMES BELLEAU, ESQ. (B.A.T. IND.)~~<br>~~PO BOX 3200~~<br>~~AUBURN, ME 04212-3200~~ |

| Date of Entry | |
|---|---|
| 2000<br>Mar. 27 | Received 03-24-00:<br>Complaint Sumamry Sheet filed.<br>Jury Trial Demanded Class Action Complaint filed. |
| " " | |
| April 4 | Received 4-4-00.<br>Acceptance of Service of Process filed showing service on 3-31-00 upon Defendants' Liggett Group, Inc. and Brooke Group, Ltd. to Robert J. Gallo, Esq. |
| April 12 | Received 04/11/00:<br>Acceptance of Service of process filed showing service upon Defendants Philip Morris Companies, Inc., Philip Morris, Inc., R.J. Reynolds Tobacco Holdings, Inc., R.J. Reynolds Tobacco Company, BATUS Holdings, Inc. and Brown & Williamson Tobacco Corp. on 04/11/00 to John F. Lambert, Jr., Esq. |
| April 19 | Received 04/19/00:<br>Motion for Admission of Gordon Ball Pro Hac Vice filed.<br>Affidavit of Gordon Ball for Admission Pro Hac Vice filed. |
| "" "" | |
| April 19 | Received 04/19/00:<br>Joint Motion for Leave to Respond to Complaint filed. |
| April 24 | Received 04/21/00:<br>ORDER filed. (Perkins, J.)<br>Upon Motion fo the Plaintiffs and Philip Morris Companies, Inc. and Philip Morris Incorporated, this Court orders: 1. that the Defendants (with the exception of B.A.T. Industries, plc which does not seek the benefit of this Motion) have until May 30, 2000 to respond to the Complaint of the Plaintiffs dated March 24, 2000 with the understand- |