**In re MILK PRODUCTS ANTITRUST LITIGATION**

**Master File No. 3–96–458.**

United States District Court, D. Minnesota, Third Division.

Sept. 30, 1997.

**1018**

Jack L. Chestnut, Karl L. Cambronne, Jeffrey D. Bores, Chestnut & Cambronne, Mpls, MN, John Alexander Cochrane, Cochrane & Bresnahan, St. Paul, Hugh V. Plunkett, Robert Kinney Shelquist, Bryan John Leary, Plunkett Schwartz Peterson, Mpls, MN, Richard P. Olson, Olson Burns & Lee, Minot, ND, Kevin Wayne Rouse, Rouse Law Office, Richard A. Lockridge, Mpls, MN, for Gerald Bukstein, Hoffman Corner Oil Co., Magic City Cakes, Inc.

Kevin Wayne Rouse, Rouse Law Office, Mpls, MN, for Littlestore of Minneapolis.

Richard A. Lockridge, Lockridge Grindal Nauen, Mpls., MN, for KML Corporated.

Jerome B. Pederson, Todd A. Wind, Lora Esch Mitchell, Fredrikson & Byron, Mpls., MN, for Marigold Foods, Inc., Marigold Venture Inc., Bolswessanen USA Inc., Bolswessanen Holdings, Inc.

William Leroy Sippel, Gary Maynard Hansen, Oppenheimer Wolff & Donnelly, Oppenheimer Wolff & Donnelly, Mpls., MN, for Land O'Lakes, Inc., Country Lake Foods, Inc.

George Orlyn Ludcke, Kelly & Berens, Mpls, MN, for Meyer Bros. Dairy Inc.

Alan Hall Maclin, W. Patrick Judge, Briggs & Morgan, St Paul, MN, for Oak Grove Dairy, Inc., Geo Benz & Sons Inc.

James Lloyd Volling, Faegre & Benson, Mpls., MN, for Schroeder Brothers, Inc., Schroeder Milk Co., Inc.

Joseph Michael Sokolowski, Parsinen Kaplan Levy Rosberg & Gotlieb, Mpls, MN, for K&P Co. Inc.

Robert G. Schiefelbein, Schiefelbein Law Office, Eden Praire, MN, pro se.

## PRETRIAL ORDER NO. 7

MAGNUSON, Chief Judge.

This matter is before the Court upon multiple motions by both Defendants and Plaintiffs. Defendants Marigold Foods, Inc., Meyer Brothers Dairy, Inc., and Schroeder Milk Company, Inc. have filed Motions to Dismiss, pursuant to Federal Rule of Civil Procedure 12(b)(6), for failure to state a claim upon which relief can be granted. Defendants Land O'Lakes, Inc., Oak Grove Dairy, Inc., Marigold Venture, Inc., K & P Company, Inc., BolsWessanen Holdings, Inc., and BolsWessanen U.S.A., Inc. all join in the Motion to Dismiss. Defendant Land O'Lakes, Inc. has filed a Motion to Dismiss the fraudulent concealment allegations of Plaintiffs' Second

Amended Complaint, and all remaining Defendants join in this motion. Plaintiffs have renewed a Motion to Compel Defendants' production of documents. Finally, Defendants BolsWessanen Holdings, Inc. and BolsWessanen U.S.A., Inc. have filed a Motion to Dismiss, pursuant to Rule 12(b)(2), for lack of personal jurisdiction. For the following reasons, Defendants' Motion to Dismiss under Rule 12(b)(6) is granted with respect to Defendant K & P Company and denied with respect to all other Defendants, Defendants' Motion to Dismiss the fraudulent concealment claims is granted, Plaintiffs' Motion to Compel is denied in part and granted in part, and Defendants BolsWessanen Holdings' and BolsWessanen U.S.A.'s Motion to Dismiss for lack of jurisdiction is denied with leave to renew the motion at a later date.

## BACKGROUND

On May 22, 1996, Plaintiffs filed a complaint, which was later amended, alleging that Defendants violated section one of the Sherman Act. Plaintiffs also alleged that Defendants fraudulently concealed their conspiracy and asked that the normal four-year statute of limitations not be applied. On November 22,1996, this Court dismissed Plaintiffs' First Amended Complaint on the grounds that Plaintiffs had failed to provide adequate notice of the factual grounds upon which the conspiracy claim rests because Plaintiffs' allegations were too broad and vague. (*See* Tr. Civil Mot. Hr'g at 74–75) (Clerk Doc. Nos. 82 & 84). Further, this Court ruled that Plaintiffs failed to properly plead the elements of fraudulent concealment with particularity with respect to each individual Defendant. (*See id.* at 75–76.) In their Second Amended Complaint ("Complaint"), filed on January 31, 1997, Plaintiffs again allege violations of section one of the Sherman Act and fraudulent concealment. Defendants assert that Plaintiffs' Complaint still does not comply with this Court's November 22 Order.

Plaintiffs allege that each of the Defendants engaged in a conspiracy to fix prices of milk products, in violation of section 1 of the Sherman Act, 15 U.S.C. § 1. (Pls.' Second Am. Compl. ¶ 44.) Specifically, Plaintiffs claim that "discussions and agreements occurred between officers, agents, and employees of each of the defendants," and that these discussions culminated in fixing the price of milk. (*Id.* ¶¶ 49–51.) Further, Plaintiffs allege that Defendants agreed to allocate customers and markets. (*Id.* ¶ 54.) Plaintiffs also allege that Defendants fraudulently concealed their conspiracy, thus requiring the statute of limitations to be extended beyond four years. Defendants claim that Plaintiffs' allegations remain too conclusory and request that this Court dismiss the Complaint.

## DISCUSSION

### A. Standard of Review

For the purposes of Defendants' Motion to Dismiss, the Court takes all facts alleged in Plaintiffs' Complaint as true. *See Westcott v. Omaha*, 901 F.2d 1486, 1488 (8th Cir.1990). Further, the Court must construe the allegations in the Complaint and reasonable inferences arising from the Complaint favorably to Plaintiffs. *See Morton v. Becker*, 793 F.2d 185, 187 (8th Cir.1986). A motion to dismiss will be granted only if "it appears beyond doubt that the plaintiff can prove no set of facts which would entitle him to relief." *Id.*; *see Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). The Court applies these standards in the following discussion.

### B. Conspiracy Allegations

Rule 8 of the Federal Rules of Civil Procedure provides for liberal pleading, requiring only "a short, plain statement of facts sufficient to give the defendant fair notice of the basis of the claim." *Five Smiths, Inc. v. National Football League Players Ass'n*, 788 F.Supp. 1042, 1048 (D.Minn.1992) (quoting *Fusco v. Xerox Corp.*, 676 F.2d 332, 337 n. 7 (8th Cir. 1982)); *see also Baxley–DeLamar Monuments, Inc. v. American Cemetery Ass'n*, 843 F.2d 1154, 1156 (8th Cir.1988). These

liberal pleading rules are as equally applicable to federal antitrust claims as they are to any other claim. *See Baxley–DeLamar,* 843 F.2d at 1156. In the antitrust conspiracy context, however, general allegations of a conspiracy will not suffice; the claim must include a statement of "the facts constituting the conspiracy, its object and accomplishment." *Five Smiths, Inc.,* 788 F.Supp. at 1048 (quoting *Fusco,* 676 F.2d at 337 n. 7). This Court notes that in the antitrust area, courts are especially reluctant to grant dismissals for failure to state a claim. *See Great Atl. & Pac. Tea Co. v. Amalgamated Meat Cutters & Butcher Workmen of N. Am.,* 410 F.2d 650, 653 (8th Cir.1969); *see also Hospital Bld'g Co. v. Trustees,* 425 U.S. 738, 746, 96 S.Ct. 1848, 48 L.Ed.2d 338 (1976) (stating that "in antitrust cases, where 'the proof is largely in the hands of the alleged conspirators,' dismissals ... should be granted very sparingly") (citations omitted).

■ In its earlier ruling on Plaintiffs' First Amended Complaint, this Court held that the allegations in Plaintiffs' complaint were too vague and thus failed to provide adequate notice to Defendants of the factual grounds underlying the price fixing claim. (*See* Tr. Civil Mot. Hr'g at 75.) To successfully withstand a motion for dismissal, Plaintiffs' price-fixing claim must include the following allegations: "(1) the existence of an agreement, combination or conspiracy, (2) among actual competitors ... (3) with the purpose or effect of 'raising, depressing, fixing pegging or stabilizing ... price[s] ... ' (4) in interstate ... commerce." *Five Smiths, Inc.,* 788 F.Supp. at 1048 (quoting *Cayman Exploration Corp. v. United Gas Pipe Line Co.,* 873 F.2d 1357, 1361 (10th Cir.1989)). While Plaintiffs' Complaint fails to satisfy these requirements with respect to Defendant K & P Company, Inc. ("K & P"), the Complaint sufficiently alleges a price-fixing conspiracy among the remaining Defendants.

### 1. Existence of Agreement

■ Under the Sherman Act, Plaintiffs must allege a " 'contract, combination ... or conspiracy' in restraint of trade." *Quality Mercury, Inc. v. Ford Motor Co.,* 542 F.2d 466, 469 (8th Cir.1976). A combination is created if more than unilateral action is involved; thus, it is not necessary to plead a formal agreement between the competitors. *Id.* Plaintiffs allege that Defendants furthered their "agreement" by "discussing and agreeing on the prices they would charge for milk and milk products." (Pls.' Second Am. Compl. ¶ 49.)

■ Plaintiffs' allegations with respect to K & P fail on this first prong because the allegations fail to allege that K & P participated in any sort of agreement with the other Defendants. Aside from the fraudulent concealment allegations, which will be discussed later, K & P is mentioned in only one other paragraph of the Complaint. Plaintiffs allege that K & P furthered the conspiracy "by engaging in illegal pricing discussions in person and by telephone with the other defendants and unnamed co-conspirators," illegally allocated customers, and illegally enforced compliance with the conspiracy. (Pls.' Second Am. Compl. ¶ 83.) Such allegations are too vague to place K & P on notice of the factual grounds of the claims against it. While the allegations against the other Defendants list specific actions taken by the companies, the allegations against K & P attempt to lump K & P in with the other defendants simply by alleging that K & P communicated with them. Because these allegations fail to provide adequate notice to K & P, the claims against K & P must be dismissed.

■ The Complaint specifically indicates how each remaining individual Defendant participated in the alleged agreement. For example, Plaintiffs allege that Marigold Foods, Inc. ("Marigold Foods") and Marigold Venture, Inc. ("Marigold Venture") agreed to give Defendant Schroeder Milk Co. ("Schroeder") a contract for bottling milk in exchange for Schroeder agreeing not to engage in price competition or compete for additional customers. (*Id.* ¶ 56.) Further, Plaintiffs al-

lege that the St. Cloud market was allocated to Defendant Oak Grove Dairy, Inc. ("Oak Grove") as long as Oak Grove agreed not to compete for another market. (*Id.* ¶ 57.) Further, Plaintiffs allege that Defendants prevented independent sales entities from selling milk to markets already allocated to Defendants Meyer Brothers Dairy, Inc. ("Meyer"), Oak Grove, and Schroeder. As to Defendants BolsWessanen U.S.A., Inc. ("U.S.A.") and BolsWessanen Holdings, Inc. ("Holdings"), Plaintiffs allege that both Defendants acquiesced in and approved of the actions of its subsidiaries, Marigold Foods and Marigold Venture. (*Id.* ¶¶ 70–71.) Finally, Plaintiffs allege that Defendant Land O'Lakes, Inc. ("LOL") engaged in pricing discussions with the other Defendants, "including an employee of ... Marigold Foods ... and an officer and employee of ... Meyer," and refused to bottle milk for competitors who were not involved in the conspiracy. (*Id.* ¶ 73.) While these examples are not an exhaustive list of the allegations made in the Complaint, they are sufficient to illustrate that each individual Defendant mentioned above has been alleged to be involved in a conspiracy.

A contract, combination or conspiracy may be shown simply by alleging that the competitors' conduct was "joint or collaborative," and should be judged by the Defendants' words and actions. *Quality Mercury*, 542 F.2d at 469. In the present case, Plaintiffs have alleged that Defendants, other than K & P, acted in a joint or collaborative way by allocating markets and engaging in pricing discussions. These allegations are sufficient to meet the requirements of section one of the Sherman Act.

### 2. Among Competitors

Plaintiffs must also allege that the anticompetitive conduct is occurring among actual competitors. *See Five Smiths, Inc.*, 788 F.Supp. at 1048. Plaintiffs allege that all Defendants are "engaged in the business of producing, marketing and selling milk and milk products throughout the five-state area." (Pls.' Second Am. Compl.

¶¶ 17–28.) As Defendants are all engaged in the same business within the same market, Plaintiffs have sufficiently alleged conduct among competitors.

### 3. Purpose or Effect of Raising or Fixing Prices

The Sherman Act also requires that a plaintiff allege that the purpose of a contract, combination or conspiracy is to raise, lower, fix or stabilize prices. *See Five Smiths, Inc.*, 788 F.Supp. at 1048. Plaintiffs allege that Defendants would agree among themselves to increase the price of milk products or agree to uniformly reduce prices, resulting in a fixed, stabilized price. (Pls.' Second Am. Compl. ¶ 46.) Further, Plaintiffs allege that Defendants' conspiracy actually resulted in raised and stabilized prices which substantially eliminated competition. (*Id.* ¶ 86.) These allegations meet the requirements of section one of the Sherman Act because they allege that Defendants' conduct did have the purpose or effect of raising or fixing prices.

### 4. Interstate Commerce

Finally, the Sherman Act requires Plaintiffs to allege that Defendants' conspiracy involved products within interstate commerce. Plaintiffs allege that Defendants produce or purchase milk and milk products for distribution in a five-state area (including Minnesota, Wisconsin, Iowa, North Dakota, and South Dakota). (*Id.* ¶¶ 7, 39–41.) Defendants' business activities are thus alleged to have a substantial effect on interstate commerce. (*Id.* ¶ 42.) Therefore, Plaintiffs have sufficiently alleged that Defendants' conduct involved products within interstate commerce.

In summary, Plaintiffs have alleged all of the elements necessary to make out a violation of section one of the Sherman Act with respect to all Defendants besides K & P. Plaintiffs have further enumerated specific acts of each of these Defendants which are alleged to be violations of the Act. Accordingly, Plaintiffs have met the liberal pleading requirements of Rule 8 with respect to the Sherman Act conspira-

cy claims, and these claims should not be dismissed. However, Defendant K & P must be dismissed from this action because the allegations against it are too broad or vague to satisfy Rule 8.

## C. Fraudulent Concealment Allegations

While Rule 8 generally contains liberal pleading rules, an allegation of fraudulent concealment must be pled with substantially more detail. Rule 9(b) requires "averments of fraud" to be stated with particularity, Fed.R.Civ.P. 9(b), including the "time, place and content of the false misrepresentations, the fact misrepresented and what was retained or given up as a consequence of the fraud." *Firestone v. Firestone*, 76 F.3d 1205, 1211 (D.C.Cir. 1996) (quoting *Kowal v. MCI Communications Corp.*, 16 F.3d 1271, 1278 (D.C.Cir. 1994)); *see also Hunt v. Magnell*, 758 F.Supp. 1292, 1298 (D.Minn.1991). To toll the four-year statute of limitations on grounds of fraudulent concealment, Plaintiffs must establish three elements: (1) Defendants' concealment of Plaintiffs' cause of action, (2) failure by Plaintiffs to discover the existence of their cause of action, and (3) due diligence by Plaintiffs in attempting to discover the claim. *See In re Wirebound Boxes Antitrust Litig.*, 128 F.R.D. 262, 266 (D.Minn.1989) (citing *Dayco Corp. v. Goodyear Tire & Rubber Co.*, 523 F.2d 389, 394 (6th Cir.1975)); *Willmar Poultry Co. v. Morton–Norwich Prods., Inc.*, 1974–2 Trade Cas. (CCH) ¶ 75,292 (D.Minn.1974). Failure to properly allege any one of these elements is fatal to Plaintiffs' claim.

Plaintiffs continue to assert that only the first two elements are required, and that due diligence is simply an affirmative defense to be raised by Defendants at trial. (*See* Pls.' Mem. Opp'n at 3.) In support of this assertion, Plaintiffs rely on *Kansas City v. Federal Pacific Electric Co.*, 310 F.2d 271 (8th Cir.1962). However, a close review of *Kansas City* reveals that the purported second element of fraudulent concealment—"successful concealment from the injured party"—in-

cludes the element of due diligence. *Id.* at 278 n. 9. The *Kansas City* court indicated that the "statute ... will begin to run only from the time the right of action is discovered or, by the exercise of ordinary diligence, might have been discovered." *Id.; see also Wood v. Carpenter*, 101 U.S. 135, 141, 25 L.Ed. 807 (1879) (stating that a plaintiff "must aver and show that he used due diligence to detect" the claim). Thus, there would be no successful concealment if, by due diligence, Plaintiffs should have discovered their cause of action. Moreover, the Supreme Court recently reinforced the importance of due diligence in a fraudulent concealment claim. In *Klehr v. A.O. Smith Corp.*, the Court stated that "a plaintiff who is not reasonably diligent may not assert 'fraudulent concealment.'" 521 U.S. 179, 117 S.Ct. 1984, 1993, 138 L.Ed.2d 373 (1997). While the *Klehr* decision was limited to the context of civil RICO, the Court noted that antitrust cases support the requirement of due diligence and that no antitrust cases state the contrary. *See id.* Therefore, the Court stands by its earlier ruling that due diligence is a required element of a fraudulent concealment claim. An analysis of Plaintiffs' Complaint leads to the conclusion that Plaintiffs have failed to plead each of the elements of fraudulent concealment with sufficient particularity, and, thus, the claim for fraudulent concealment must be dismissed.

### 1. Defendants' Concealment of the Cause of Action

Plaintiffs claim that they did not discover the existence of their antitrust claim against Defendants until May 1996. (Pls.' Second Am. Compl. ¶ 92.) Moreover, Plaintiffs allege that discovery prior to this time was impossible because of Defendants' concealment of their illegal activity. (*Id.*) However, Plaintiffs must make "specific allegations of affirmative acts taken solely to conceal a price fixing conspiracy." *In re Wirebound*, 128 F.R.D. at 266. In the present case, Plaintiffs allege that instead of admitting to a conspiracy, Defen-

dants attributed their high profits to diversified operations, improved efficiency, drought, tight supplies, and state law. (Pls.' Second Am. Compl. ¶ 92.) Plaintiffs further allege that Defendants publicly denied price fixing allegations, participated in "clandestine meetings" at which price fixing was discussed, and silently acquiesced to the conspiracy. (*Id.* ¶¶ 94, 98–99.) Simply denying the existence of an antitrust violation does not constitute fraudulent concealment, and to hold otherwise "would effectively nullify the statute of limitations in these cases." *Pocahontas Supreme Coal Co. v. Bethlehem Steel Corp.*, 828 F.2d 211, 218–19 (4th Cir.1987); *see also In re Aluminum Phosphide Antitrust Litig.*, 905 F.Supp. 1457, 1470 (D.Kan.1995); *Ecodyne Corp. v. Guthrie No. Am. Inc.*, 716 F.Supp. 1132, 1137 (N.D.Ill.1989). Similar to the present case, the Defendants in *Pocahontas* attributed the change in prices to factors other than an illegal conspiracy. There, the court held that fraudulent concealment does not result from a mere failure to own up to illegal conduct, but rather occurs when defendants affirmatively attempt to deflect litigation. *Id.* at 219.

Further, this case is distinguishable from *In re Wirebound*, upon which Plaintiffs rely. In *Wirebound*, the plaintiffs alleged that the defendants committed specific acts with the sole purpose of concealing a conspiracy. For example, the defendants used plain stationery, circulated a copy of the "rules" of the conspiracy, avoided telephone calls, and labeled correspondence as "personal and confidential." *In Re Wirebound*, 128 F.R.D. at 266. Further, the plaintiffs alleged that the defendants represented to others that they were conducting trade association meetings when in fact they were meeting in secrecy regarding the conspiracy. *Id.* The court ruled that these acts were sufficient to infer fraudulent concealment of the conspiracy. *Id.*

In marked contrast to *Wirebound*, the Plaintiffs in the present case have not made sufficient allegations of "affirmative acts" of concealment. For example, the mere allegation that Defendants mailed letters to customers attributing price increases to market factors, (*See* Pls.' Second Am. Compl. ¶ 93), does not lead to the conclusion that Defendants affirmatively concealed a conspiracy, as would a letter on plain stationery meant to conceal the identity of its sender. Similarly, alleging that Defendants participated in "clandestine meetings," (*Id.* ¶ 99), is not tantamount to representing to others that the meetings were valid trade association meetings when in fact they were meetings in furtherance of a conspiracy. *See In re Aluminum Phosphide*, 905 F.Supp. at 1470 (dismissing fraudulent concealment claim because plaintiffs failed to cite specific actions by defendants to keep meetings secret). Additionally, alleging that Defendants' silence indicates acquiescence to a conspiracy, (*see* Pls.' Second Am. Compl. ¶ 98), does not constitute an allegation of an affirmative act of concealment. *See In re Aluminum Phosphide*, 905 F.Supp. at 1470 (holding that "silence or passive conduct is not fraudulent unless parties' relationship imposes duty to disclose"). Merely claiming that "all conspiracies are self-concealing," (*see id.* ¶ 92), is simply insufficient.

Nowhere in the Complaint do Plaintiffs allege a specific time that Defendants affirmatively concealed the existence of a conspiracy. The only allegation in Plaintiffs' Complaint which could possibly be construed as an affirmative act is Plaintiffs' claim that Defendant Marigold Foods paid "hush money" to an executive to prevent his alerting the authorities of the conspiracy. (Pls.' Second Am. Compl. ¶ 99.) This payment is said to have taken place "sometime in 1990 or 1991." (*Id.*) Plaintiffs then attempt to incriminate all other Defendants in this alleged payment by alleging that each of them "approv[ed] of or acquiesc[ed]" in the payments. (*Id.*) As stated earlier, silent acquiescence does not constitute an affirmative act of concealment. *See In re Aluminum Phosphide*, 905 F.Supp. at 1470. Further, this specific allegation of Plaintiffs is not pled with

particularity. Vaguely alleging that "something" occurred at "sometime" fails to satisfy the particularity requirement. As Plaintiffs have not pled Defendants' acts of concealment with particularity, Plaintiffs have failed to satisfy the first element of fraudulent concealment.

### 2. Plaintiffs' Failure to Discover Existence of Cause of Action

Even assuming Plaintiffs successfully alleged Defendants' affirmative acts of concealment, Plaintiffs must also allege that this concealment was successful—that is, that as a result of Defendants' concealment, Plaintiffs failed to discover the existence of the antitrust claim. In the present case, Plaintiffs allege that they "could not have discovered" the claim any earlier because "the violations were fraudulently concealed by defendants." (Pls.' Second Am. Compl. ¶ 92.) Such a claim is circular, and necessarily relies on the success of the concealment allegations. As this Court determined that Plaintiffs failed to properly allege affirmative acts of concealment by Defendants, Plaintiffs may not rely on those allegations to support this element of their claim. *See In re Aluminum Phosphide,* 905 F.Supp. at 1471 (holding that conclusory allegations that plaintiffs were unaware of the conspiracy is insufficient). Thus, the second element of a fraudulent concealment claim is not adequately pled.

### 3. Plaintiffs' Due Diligence in Attempting to Discover Claim

Finally, even if Plaintiffs were able to allege affirmative acts of concealment by Defendants resulting in a failure to discover the claim, Plaintiffs' fraudulent concealment claim would still fail because Plaintiffs have not alleged due diligence. Instead, Plaintiffs continue to assert that due diligence is not an element of fraudulent concealment, and that Defendants bear the burden of proving Plaintiffs' failure to exercise due diligence. (*See* Pls.' Mem. Opp'n at 3–5.) However, as discussed earlier and as this Court noted in its previous ruling, due diligence is an established element of fraudulent concealment. (*See* Tr. Civil Mot. Hr'g at 75) (noting that Plaintiffs failed to explain when or how the discovery of their claim was made and why it was not made sooner).

In *Wood v. Carpenter,* the Supreme Court held that parties alleging fraudulent concealment "must aver and show that [they] used due diligence to detect it, and if [they] had the means of discovery in [their] power, [they] will be held to have known it." *Wood v. Carpenter,* 101 U.S. at 140. Thus, any activities which would create notice and "excite attention" will require inquiry on the part of Plaintiffs; merely asserting that they have diligently pursued their claims is not a sufficient allegation. *See Dayco Corp. v. Goodyear Tire & Rubber Co.,* 523 F.2d 389, 394 (6th Cir.1975) (stating that a "mere allegation of due diligence without asserting what steps were taken is insufficient under the Wood standard"); *In re Aluminum Phosphide,* 905 F.Supp. at 1471; *Berkson v. Del Monte Corp.,* 743 F.2d 53, 56 (1st Cir. 1984). Plaintiffs here assert that they did not become aware of any facts to excite their attention until May 1996. However, as this Court noted in its previous Order, the Justice Department announced investigations of Defendants in July 1995. Plaintiffs claim that Defendants' denials of wrongdoing following this announcement amounted to fraudulent concealment. (Pls.' Second Am. Compl. ¶ 98.) As established earlier, such denials do not constitute fraudulent concealment. Plaintiffs' Complaint also states that the effect of Defendants' alleged conspiracy was that milk prices were "raised and stabilized . . . and price competition was substantially eliminated." (*Id.* ¶ 86.) This fact alone would seem to excite attention and thus put Plaintiffs on inquiry notice. Aside from indicating the date when they became aware of their claim, Plaintiffs failed to answer the questions this Court posed in its previous Order. No explanation is made of the steps Plaintiffs used to discover their claim, nor do Plaintiffs explain

why the facts underlying their claim were not available to them at an earlier date. As a result, Plaintiffs have failed to sufficiently allege their due diligence in pursuing their claim. As Plaintiffs have failed to properly plead with particularity each of the elements of their fraudulent concealment claim, the Court must dismiss Count IX of Plaintiffs' Complaint.

### D. Land O'Lakes's Successor in Interest and Majority Owner Liability

■ Plaintiffs' Complaint lists as a defendant, LOL, "individually and as a successor in interest to Country Lake Foods, Inc. and Dairy Fresh, Inc." In its November 22 Order, this Court dismissed Country Lake Foods as a defendant based on the fact that the corporation had been dissolved more than three years prior to the filing of Plaintiffs' first complaint in this case. (*See* Tr. Civ. Mot. Hr'g at 72.) Plaintiffs now allege that both Country Lake Foods and Dairy Fresh were participants in a conspiracy with other Defendants from 1988 to 1991, and from 1985 to 1990, respectively. (Pls.' Second Am. Compl. ¶¶ 21–22.) Plaintiffs note that Country Lake Foods acquired Dairy Fresh in 1989 and that LOL acquired the minority, publicly-held interest in Country Lake Foods in 1991. (*Id.*) The only alleged act of either of the above two "subsidiaries" is a claim that Country Lake Foods fraudulently concealed the conspiracy by publicly claiming that the high price of milk was due to factors other than a conspiracy. (*Id.* ¶ 92.) As discussed earlier, such a claim does not amount to fraudulent concealment. Further, the alleged conspiratorial acts of Country Lake Foods and Dairy Fresh occurred more than four years prior to the filing of Plaintiffs' Complaint. Because Plaintiffs have failed to properly plead fraudulent concealment, the statute of limitations would bar a claim based on these actions. Nowhere else does the Complaint attribute any illegal acts to either company. Accordingly, it is difficult for this Court to contemplate exactly what LOL would be liable for under a theory of successor in interest or majority owner liability. If the companies themselves are not accused of any wrongdoing, it follows that their parent corporation can not be vicariously liable.

■ Further, even if Country Lake Foods and Dairy Fresh had engaged in illegal acts within the statute of limitations period, Plaintiffs have failed to properly plead the elements of successor liability. Minnesota statutory law provides for transferee liability, but "only to the extent provided in the contract or agreement between the transferee and the transferor." Minn.Stat. § 302A.661. Plaintiffs' Complaint does not allege that LOL agreed to assume any liability of either Country Lake Foods or Dairy Fresh. In addition, in only four circumstances will a court make an exception to the statutory rule regarding transferee liability: (1) when the successor corporation expressly or impliedly agreed to assume such liabilities; (2) when the acquisition amounts to a merger of the corporations; (3) when the successor corporation is merely a continuation of the purchased corporation; and (4) when the purpose of the transaction is to fraudulently escape liability for debts. *See Niccum v. Hydra Tool Corp.*, 438 N.W.2d 96, 98 (Minn.1989); *see also Cooper v. Lakewood Eng'g & Mfg. Co.*, 45 F.3d 243, 245 (8th Cir.1995) (applying Minnesota law). Rather than allege one of these exceptions in their Complaint, Plaintiffs rely on the mere fact that LOL acquired Country Lake Foods and Dairy Fresh to establish successor liability. While Plaintiffs do bring up theories of "de facto merger," "mere continuation," and "substantial continuation" in their brief, these theories are not supported by a single allegation in the Complaint. The same can be said for Plaintiffs' request that this Court disregard corporate formalities and "pierce the veil" of LOL. Assuming all of the facts in Plaintiffs' Complaint are true, none would serve as a basis for imposing successor liability upon LOL. Consequently, the Court concludes that Plaintiffs' claims

against LOL as majority owner and as a successor in interest to Country Lake Foods and Dairy Fresh must be dismissed.

### E. Motion to Compel Discovery

Plaintiffs have also made a motion to compel the production of documents by Defendants. Plaintiffs state that they have requested three categories of documents: those already compiled by Defendants in response to subpoenas from the Antitrust Division of the United States Department of Justice ("grand jury documents"), documents regarding sales and pricing that have been provided to the State of Minnesota, and documents regarding milk and milk product economic data that have been provided to third parties. Defendants object to all three categories of documents.

#### 1. Grand Jury Documents

Plaintiffs' Request No. 1(a) asks for documents submitted by Defendants to the grand jury or agencies investigating potential violations by Defendants. Defendants object to the grand jury documents request on the basis that it is unduly burdensome and not reasonably calculated to lead to admissible evidence. Further, Defendants claim that the grand jury documents would not parallel the issues of the present action, and that Rule 6(e) of the Federal Rules of Criminal Procedure protects this information from discovery. Plaintiffs' Request No. 1(b) asks for documents relating to the destruction of documents requested by the grand jury or investigative agencies. Defendants deny the existence of any such documents.

■ Defendants' argument that the production of the grand jury documents would be unduly burdensome is weak at best. Given the fact that these documents were previously compiled for the grand jury, it would not seem to pose much difficulty to gather them together once again. However, Defendants remaining two arguments have merit. First, Defendants claim that these documents do not parallel the issues in Plaintiffs' Complaint. At this early stage in this case, Defendants

may well be correct in this assertion. Considering the large volume of documents at issue, it would be premature to order their production when they may have no bearing on the case. Furthermore, it is highly probable that these grand jury documents will duplicate those documents produced in response to Plaintiffs' second and third requests.

■ Finally, this Court agrees that Rule 6(e) protects such documents. Rule 6(e) prohibits persons from disclosing material occurring before the grand jury. Fed.R.Crim.P. 6(e). The Supreme Court has recognized that in order for grand jury proceedings to function properly, secrecy must be maintained. *See Douglas Oil Co. v. Petrol Stops Northwest,* 441 U.S. 211, 218, 99 S.Ct. 1667, 60 L.Ed.2d 156 (1979). The policy behind such secrecy is to protect from disclosure "only the essence of what takes place in the grand jury room, in order to preserve the freedom and integrity of the deliberative process." *In re Grand Jury Proceedings Relative to Perl,* 838 F.2d 304, 306 (8th Cir.1988) (citing *United States v. Procter & Gamble Co.,* 356 U.S. 677, 681–82, 78 S.Ct. 983, 2 L.Ed.2d 1077 (1958)). The standard for determining whether the secrecy of a grand jury may be broken is a showing that the material sought is necessary to avoid a possible injustice, that the need for disclosure outweighs the need for continued secrecy, and that the request covers only those materials meeting the above two tests. *See Douglas Oil Co.,* 441 U.S. at 221–22, 99 S.Ct. 1667. This standard applies even if the grand jury has concluded its investigation because courts must consider the effect that granting the request may have on future grand juries. *See id.* at 222, 99 S.Ct. 1667. Further, the burden of showing this "particularized need" rests on the party seeking the information. *See id.* at 223, 99 S.Ct. 1667. Finally, the ultimate decision of whether to grant such a motion is within the discretion of the court. *See id.* at 223, 228, 99 S.Ct. 1667 ("Generally we leave it to the

considered discretion of the district court to determine the proper response to requests for disclosure under Rule 6(e)").

In their brief supporting the motion to compel discovery, Plaintiffs make no attempt to establish the necessary elements showing particularized need for the grand jury documents. First, Plaintiffs fail to assert that an injustice will result if the documents are not produced. Especially in light of the fact that the same information may be found in documents turned over pursuant to Plaintiffs' other requests, it is not evident that any injustice will result if Plaintiffs' motion to compel is not granted. Second, rather than explain how or why their need for these documents supersedes the need for retaining the grand jury's secrecy, Plaintiffs simply assert that the documents are not covered by Rule 6(e). However, as the Eighth Circuit has noted, revealing the contents of these documents would still reveal " 'at the very least, the direction of the grand jury's investigation and the names of persons involved.' " *Perl*, 838 F.2d at 307 (quoting *In re Sealed Case*, 801 F.2d 1379, 1381 (D.C.Cir.1986)). This is true even when the documents may have been prepared for reasons independent of the grand jury investigation. *See id.* In this case, Plaintiffs make no assertion that the requested documents were produced independently of the grand jury investigation (i.e., the documents may have been created specifically for the grand jury). As such, the logical inference would be that the contents of these documents may tend to reveal the substance of the grand jury proceedings. Moreover, the fact that the grand jury has concluded its investigation does not remove these documents from the reach of Rule 6(e). While it is true that the interest in secrecy may be reduced, a document may still "reveal[ ] something about the intricate workings of the grand jury itself." *Id.* at 306. Finally, Plaintiffs have failed to show that their request covers only those documents for which they have shown particularized need. In fact, Plaintiffs have not shown particularized need for any of Defendants' documents.

Consequently, Plaintiffs' request is too broad. Because Plaintiffs have not satisfied the test for turning over grand jury documents, Plaintiffs' motion to compel discovery as to these documents is denied. Additionally, Defendants have stated that no documents exist to satisfy the criteria of Plaintiffs' Request No. 1(b). Therefore, Plaintiffs' motion to compel as to these documents is also denied.

### 2. Non–Grand Jury Documents

 Plaintiffs' second and third requests for documents refer to pricing and market information provided by Defendants to state and federal entities, as well as to other third parties. Defendants object to these requests primarily on the basis that they are not relevant, and that they are vague, overbroad, ambiguous, and unduly burdensome. Defendants further object to the request for information given to third parties on the grounds of attorney-client privilege, the work product doctrine, and joint defense privilege. Rule 26 of the Federal Rules of Civil Procedure allows discovery as to

> any matter, not privileged, which is relevant to the subject matter involved in the pending action.... The information sought need not be admissible at the trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence.

Fed.R.Civ.P. 26(b)(1). This Rule is to be construed broadly and thus encompasses "any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case." *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351, 98 S.Ct. 2380, 57 L.Ed.2d 253 (1978) (citing *Hickman v. Taylor*, 329 U.S. 495, 501, 67 S.Ct. 385, 91 L.Ed. 451 (1947)). Defendants cannot reasonably argue that none of these requested documents is relevant to the subject matter of this case or that none could potentially lead to other relevant matter. Pricing, quantity, and marketing data for milk and milk products surely are relevant to a claim of price-fixing. Thus, to the extent

that these documents may lead to discoverable information, Defendants must turn them over.

 As for Defendants' claims of privilege, the Court finds them to be unsubstantiated at this point. The party asserting attorney-client privilege bears the burden of establishing the elements of the privilege. *See Bouschor v. United States,* 316 F.2d 451, 456 (8th Cir.1963); *In re Coordinated Pretrial Proceedings in Antibiotic Antitrust Actions,* 1972 Trade Cas. (CCH) ¶ 74,237 (D.Minn.1971). A blanket statement that a privilege applies simply will not suffice; Defendants must provide this Court with enough information to determine whether the privilege truly applies to each individual document. *See FTC v. Shaffner,* 626 F.2d 32, 37 (7th Cir.1980); *In re Grand Jury Empanelled Feb. 14, 1978,* 603 F.2d 469 (3d Cir.1979). In the present case, Defendants' objection to discovery is made with such a blanket statement. (*See* Mem. Supp. Pls.' Mot. to Compel at 5) ("Land O'Lakes further objects ... [on the grounds that it is] protected by the attorney-client privilege, the work product doctrine, [and] the joint defense privilege.") Such a cursory objection fails to provide this Court with the factual background necessary to assess the applicability of the privilege on a document-by-document basis. Accordingly, the Court grants Plaintiffs' Motion to Compel discovery as to Requests Nos. 2 and 3. If Defendants wish to further assert the attorney-client privilege, or any other privilege, they must do so with factual support.

### F. Personal Jurisdiction over BolsWessanen

Defendant BolsWessanen U.S.A., Inc. ("U.S.A.") and Defendant BolsWessanen Holdings, Inc. ("Holdings") renew their Motion to Dismiss under Rule 12(b)(2) for lack of personal jurisdiction. Previously, this Court, pursuant to Rule 56(f), suggested that it would address this issue after discovery went forward. (*See* Tr. Civil Mot. Hr'g at 73.) While the Order which was entered indicated that the motion was denied, (*See* Clerk Doc. No. 84), the Court

would like to clarify that the motion was denied without prejudice. Therefore, Plaintiffs' argument that the present motion attempts to circumvent this Court's previous ruling is incorrect. However, because Plaintiffs' First Amended Complaint was dismissed, discovery has yet to occur. Consequently, the Court still lacks adequate factual information upon which it can determine the issue of in personam jurisdiction. Therefore, the Motion to Dismiss for lack of personal jurisdiction must be denied with leave to renew the motion at a later date.

### G. Product and Geographic Market Definitions

Finally, Defendant LOL contests Plaintiffs' definition of the relevant product and geographic market for this antitrust action. Plaintiffs' Complaint refers to " 'milk and milk products' ... including, but not limited to, fluid milk, fluid milk products and ice cream." (Pls.' Second Am. Compl. ¶ 6.) Additionally, the Complaint indicates that the alleged activities occurred in a five-state area, including "Minnesota, Wisconsin, Iowa, North Dakota, and South Dakota." (*Id.* ¶ 7.) LOL claims that these definitions are broad and unsupported by any facts. The Court agrees with Plaintiffs that "the relief LOL seeks is premature." (Pls.' Mem. Opp'n Regarding Country Lake Foods at 12.) If necessary, this issue may be addressed at a later date when the Court has more facts before it. Until that time, the Court declines to address it.

### CONCLUSION

With the exception of the allegations against Defendant K & P, Plaintiffs' Second Amended Complaint sufficiently identifies the factual grounds underlying Plaintiffs' conspiracy claim and thus provides adequate notice to Defendants. Plaintiffs allege the existence of an agreement among competitors with the purpose or effect of raising or fixing prices in interstate commerce. Therefore, Defendant K & P's Motion to Dismiss is granted, and

the remaining Defendants' Motions to Dismiss are denied. Additionally, Plaintiffs' fraudulent concealment claim is not pled with sufficient particularity. Plaintiffs fail to allege Defendants' active concealment of the cause of action, fail to explain why they did not discover the cause of action earlier, and fail to assert their due diligence in attempting to discover the claim. On that basis, the Court dismisses Plaintiffs' fraudulent concealment claim.

Additionally, Plaintiffs' claim against LOL as successor in interest and majority owner of Country Lake Foods and Dairy Fresh must fail. No specific acts of either Country Lake or Dairy Fresh were alleged. Further, any potential acts by either company occurred more than four years prior to the filing of Plaintiffs' claim and are thus barred by the statute of limitations. Therefore, all of Plaintiffs' claims against LOL as successor in interest or majority owner must be dismissed.

As Plaintiffs' Complaint is not being dismissed, it is appropriate for discovery to go forward. Defendants must turn over all relevant documents to Plaintiffs, with the exception of those documents submitted to the grand jury, as they are protected by Rule 6(e) of the Federal Rules of Criminal Procedure. Plaintiffs have failed to show a particularized need for the grand jury documents, and thus their Motion to Compel discovery is denied with respect to the grand jury documents, but granted with respect to all other requests.

Lastly, the Court determines that it is too early in the proceedings to determine the issues of personal jurisdiction and product and market definitions. First, the Motion to Dismiss for lack of personal jurisdiction is dismissed with leave to renew the motion at a later date. Second, a decision on the relevant product and geographic market definitions would be premature at this point. Therefore, the Court declines to address these issues at this point in time.

Accordingly, **IT IS HEREBY ORDERED** THAT:

1. Defendant K & P Company, Inc.'s Motion to Dismiss (Clerk Doc. No. 92) is GRANTED;

2. Defendant Marigold Foods, Inc.'s Motion to Dismiss (Clerk Doc. No. 91) is DENIED;

3. Defendant Meyer Bros. Dairy, Inc.'s Motion to Dismiss (Clerk Doc. No. 88) is DENIED;

4. Defendant Schroeder Milk Co., Inc.'s Motion to Dismiss (Clerk Doc. No. 97) is DENIED;

5. Defendant Land O'Lakes, Inc.'s Motion to Dismiss the Fraudulent Concealment Allegation (Clerk Doc. No. 89) is GRANTED;

6. Plaintiffs' claims against Defendants alleging fraudulent concealment of the combination or conspiracy, contained in Count IX of the Second Amended Complaint (Clerk Doc. No. 86), are DISMISSED WITH PREJUDICE;

7. Defendants BolsWessanen Holdings, Inc. and BolsWessanen U.S.A., Inc.'s Motion to Dismiss (Clerk Doc. No. 95) is DENIED WITH LEAVE TO RENEW the motion after further discovery; and

8. Plaintiffs' Renewed Motion to Compel (Clerk Doc. No. 140) is DENIED IN PART AND GRANTED IN PART.